# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| S.I.SV.EL. SOCIETA ITALIANA PER LO SVILUPPO DELL' ELETTRONICA S.P.A, <br><br> Plaintiff, <br> v. <br><br> RHAPSODY INTERNATIONAL INC., <br><br> Defendant. | Civil Action No. 18-69-MN-CJB |
| S.I.SV.EL. SOCIETA ITALIANA PER LO SVILUPPO DELL' ELETTRONICA S.P.A, <br><br> Plaintiff, <br> v. <br><br> SPOTIFY USA INC., <br><br> Defendant. | Civil Action No. 18-70-MN-CJB |

Timothy Devlin, DEVLIN LAW FIRM LLC, Wilmington, DE, Attorney for Plaintiff.

David E. Moore, Bindu A. Palapura and Stephanie E. O'Byrne, POTTER ANDERSON & CORROON LLP, Wilmington, DE; Patrick Bageant, HOLLYSTONE LAW, Boise, ID, Attorneys for Defendant Rhapsody International Inc.

David E. Moore, Bindu A. Palapura and Stephanie E. O'Byrne, POTTER ANDERSON & CORROON LLP, Wilmington, DE; Stefani E. Shanberg and Michael J. Guo, MORRISON & FOERSTER LLP, San Francisco, CA, Attorneys for Defendant Spotify USA Inc.

**MEMORANDUM OPINION**

April 24, 2019
Wilmington, Delaware

*[signature]*

**BURKE, United States Magistrate Judge**

Presently before the Court in this patent infringement case is Defendant Rhapsody International Inc. ("Rhapsody") and Defendant Spotify USA Inc.'s ("Spotify" and collectively, "Defendants") "Early Motion for Summary Judgment of Invalidity Pursuant to 35 U.S.C. § 101 ["Section 101"]" (the "Motion"), filed pursuant to Federal Rule of Civil Procedure 56. (D.I. 9)[1] Defendants argue that Plaintiff S.I.SV.EL. Societa Italiana per lo Sviluppo Dell'Elettronica S.p.A's ("Plaintiff") asserted United States Patent Nos. 7,412,202 (the "'202 patent"), 8,490,123 (the "'123 patent"), 7,035,863 (the "'863 patent"), 8,321,456 (the "'456 patent"), and 7,734,680 (the "'680 patent") (collectively, the "asserted patents" or the "patents-in-suit") are directed to non-patent-eligible subject matter pursuant to Section 101. (D.I. 11) This Memorandum Opinion will address the Motion as it relates to the '863 patent only.[2] For the reasons set out below, the Court GRANTS Defendants' Motion as it relates to that patent.

**I.  BACKGROUND**

**A.  Factual Background**

The '863 patent is entitled "Method, System and Program Product for Populating a User Profile Based on Existing User Profiles[.]" (D.I. 1, ex. 5 (the "'863 patent")) The '863 patent has 22 claims, with claims 1, 7, 11 and 17 being independent claims. (*Id.*, col. 7:50-10:14)

---

[1]  The Motion was originally brought jointly by three Defendants (in three separate cases): Civil Action No. 18-68-MN-CJB (in which the Defendant was Rakuten Kobo Inc.), Civil Action No. 18-69-MN-CJB (in which the Defendant is Rhapsody) and Civil Action No. 18-70-MN-CJB (in which the Defendant is Spotify). (D.I. 9) Subsequent to oral argument on the instant Motion, Plaintiff and Defendant Rakuten Kobo Inc. settled their case, (Civil Action No. 18-68-MN-CJB, D.I. 26; D.I. 27); the other two cases remain pending. Unless otherwise noted, citations to the record herein will refer to the record in Civil Action No. 18-70-MN-CJB.

[2]  The Court will address the remaining patents in subsequent Memorandum Opinions.

The technology described in the '863 patent "relates to a method, system and program product for populating a user profile based on existing user profiles[,]" such as by "populat[ing] a new user profile based on existing user profiles grouped into Vor[o]noi cluster regions."[3] (*Id.*, col. 1:12-16) In general, the asserted patent designates base characteristics for a new user profile and then associates that profile with "a particular Vor[o]noi cluster region of existing user profiles." (*Id.*, Abstract) Next, using defined characteristics found in the existing profiles within the region, the new user profile is created. *Id.* Lastly, after the profile is created, "viewing recommendations can be made." *Id.*

The patent-in-suit was drafted at a time when "the functionality of consumer electronic devices [was] increas[ing]." (*Id.*, 1:19-22) In the realm of cable and satellite television, for example, many consumers possessed set-top boxes or the like for receiving cable and satellite television, and there were other devices in the market ("such as hard-disk recorders (e.g., TIVO)") that "provided consumers with functionality never before thought possible." (*Id.*, col. 1:20-24) When creating "more advanced features[,]" companies placed greater emphasis on the "personal preferences of the individual consumer/user" and created devices allowing a user to "establish/update a user profile, which can be used [to] enhance [the] functionality of the device." (*Id.*, col. 1:24-28) For example, a user could provide information about programs they prefer or networks they frequently watch, and this could be used by other entities to determine future programming. (*See id.*, col. 1:29-32)

---

[3] The patent-in-suit frequently refers to "Vornoi cluster regions." "Vornoi" is misspelled and is meant to be a reference to the work of mathematician Georgy Voronoy. (*See* D.I. 17 at ¶ 70) His last name is also frequently spelled "Voronoi." (*See id.*)

However, according to the '863 patent, there was "currently no mechanism for populating or enhancing a user profile based on existing user profiles." (*Id.*, col. 1:36-37) "For example, if user 'A' indicates that he/she prefers the crime drama genre of programs, no current mechanism exist[ed] for adopting specific crime drama programs from similar user profiles." (*Id.*, col. 1:37-41) Part of the problem in providing such functionality was the "lack of efficient means for comparing and populating user profiles[;]" given the vast quantity of available unorganized user profiles, it was "both time consuming and impractical[]" to "compare a new user profile to such existing profiles[.]" (*Id.*, col. 1:41-46)

Thus, the patent explains, there was a need for an invention that would: (1) "populat[e] a new user profile based on existing user profiles[;]" (2) group existing user profiles "into Vor[o]noi cluster regions based on the characteristics thereof[;]" (3) associate that new user profile with the appropriate cluster region so that the characteristics of the existing user profiles could be used to create the new user profile; and (4) make "recommendations . . . based on [the] populated new user profile." (*Id.*, col. 1:47-56) The '863 purports to have addressed these needs. (*See id.*, col. 2:40-42)

### B. Procedural Background

The Court hereby incorporates by reference the summary of the procedural background of this matter, which was set out in its March 8, 2019 Memorandum Opinion ("March 8, 2019 MO"). (D.I. 25 at 4)

## II. STANDARD OF REVIEW

The Court also incorporates by reference the standard of review applicable to summary judgment motions and the legal standards relating to Section 101, which were also set out in the March 8, 2019 MO. (*Id.* at 4-11)

## III. DISCUSSION

In resolving Defendants' Motion, the Court will first discuss which claims will be addressed herein. Thereafter, it will analyze these claims under both steps of the test for patent eligibility set out in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S.Ct. 2347 (2014).

### A. Claims at Issue

In its Complaint, Plaintiff alleged infringement of "at least claims 11 and 12 of the '863 patent[.]" (D.I. 1 at ¶ 115) In their opening brief, Defendants addressed each of the patent's 22 claims and moved that all of these claims be found ineligible. (*See* D.I. 11 at 22-23) Plaintiff, in its answering brief, then made specific reference to the content of claim 11 (an independent claim) and claims 12 and 14 (claims dependent on claim 11) in explaining why all of the patent's claims were patent eligible. (D.I. 14 at 21-24) In light of this, the Court will address claims 11, 12 and 14 herein, understanding that Plaintiff's arguments for eligibility as to all of the patent's claims rise and fall on the arguments it made with regard to these particular three claims. *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365-66 (Fed. Cir. 2018); *TMI Sols. LLC v. Bath & Body Works Direct, Inc.*, C.A. No. 17-965-LPS-CJB, 2018 WL 4660370, at *6 (D. Del. Sept. 28, 2018). In doing so, the Court will primarily focus on independent claim 11 (the claim that received the most attention in the parties' briefing).

Claim 11 recites:

> **11.** A computer implemented system for populating a user profile based on existing user profiles, comprising a memory containing:
>
> a designation system for designating base characteristics for a new user profile;

> an association system for associating the new user profile with a cluster region of existing user profiles based on the base characteristics; and
>
> a population system for populating the new user profile with defined characteristics from the existing user profiles.

('863 patent, col. 8:37-47) Claim 12 is dependent on claim 11 and further provides for "a recommendation system for making a recommendation based on the populated new user profile." (*Id.*, col. 8:48-50) Claim 14 is not only dependent on claim 11 but also on claim 13 (which adds that the system "further compris[es] a cluster system for grouping a plurality of existing user profiles into cluster regions"); it contains the limitation that "the cluster regions are Vor[o]noi cluster regions in that an existing user profile in a particular cluster region is closer in proximity to other existing user profiles in the particular cluster region than it is to existing user profiles in other cluster regions." (*Id.*, col. 8:51-58)

### B. *Alice*'s Step One

Defendants assert that the claims of the '863 patent are directed to the abstract idea of "attributing characteristics to a user based on known characteristics of similar users[.]" (D.I. 11 at 22 (referring to this idea more succinctly as "stereotyping"); *see* Tr. at 102) Plaintiff does not contest that "attributing characteristics to a user based on known characteristics of similar users" is an abstract idea; instead, it argues that the claims are not actually "directed to" such an idea.

In that regard, Plaintiff asserts that Defendants have "flatly ignore[d] the numerous elements of the extensive claim language." (D.I. 14 at 21) Plaintiff argues that claim 11, for example, contains additional purportedly important and "unconventional" elements, such as that the system at issue: (1) utilizes an association system for associating the new user profile with a cluster region of existing user profiles based upon the base characteristics at issue; and (2)

6

utilizes a population system for populating that new user profile with characteristics from the existing user profiles. (*Id.* at 21-22) And it notes that with regard to the relevant dependent claims: (1) claim 12 adds that the system includes a "recommendation system[;]" and (2) claim 14 adds that the cluster regions at issue are "Vor[o]noi cluster regions[.]" (*Id.* at 22)[4]

Of course, Plaintiff is correct that the claims include reference to these additional elements. And it is true that the words associated with those elements are not explicitly found in Defendants' asserted abstract idea at issue. But for the following reasons, the Court cannot conclude that the claims are directed to one or more of the elements highlighted by Plaintiff (as opposed to the asserted abstract idea).

For one thing, numerous portions of the patent read as acknowledgments that the invention *is* directed to the proffered abstract idea. The title of the patent, for example, is "Method, System and Program Product for Populating a User Profile Based on Existing User Profiles[.]" ('863 patent, Title) At various other key points in the patent (including in the

---

[4] Plaintiff, for the first time in its sur-reply brief, also asserted that the '863 patent consists of claims that are comprised of means-plus-function elements. (D.I. 20 at 14 (noting that Defendants' expert, Dr. Kevin Jeffay, "failed to analyze any of the three claim elements as means-plus-function elements")) Yet this argument (that the claims involved means-plus-function elements and that this had something to do with why the claims were patent eligible) was never mentioned in Plaintiff's answering brief. (D.I. 14) Thus, Defendants never had the chance to address the issue in their briefing. When asked about the failure to timely raise the issue at oral argument, Plaintiff's counsel did not provide a clear explanation as to why the issue could not have been addressed earlier. (Tr. at 110, 114) Plaintiff may not save for a later brief material that should have been raised in an earlier brief; for that reason, the Court declines to consider any arguments on patent eligibility that hinge on the fact that the claims might contain means-plus-function elements. *See In re Horsehead Holding Corp. Secs. Litig.*, Civil Action No. 16-292-LPS-CJB, 2018 WL 4838234, at *17 (D. Del. Oct. 4, 2018) (citing cases). With all that said, even if these claims (which do not use the terms "means" or "means for") were ones found to utilize means-plus-function claiming, the Court does not see how that would impact the outcome here in light of the remainder of the Court's analysis of the patent as set out in this Memorandum Opinion. (*See* Tr. at 116)

Abstract, the "Background of the Invention" section and the "Summary of the Invention" section), the patentee also provides an initial one-sentence summary of the invention that states that the invention is for "populating a user profile based on existing user profiles." (*Id.*, Abstract; *id.*, cols. 1:12-14, 1:60-62 & 2:40-43; *see also* Defendants' Oral Argument Presentation, Slide 41) And in the "Detailed Description of the Invention" section, after describing a typical embodiment of the invention, the patent sums up by stating that "the present invention *populates a user profile* and makes viewing recommendations *based on existing user profiles exhibiting similar viewing preferences*." ('863 patent, col. 3:24-27 (emphasis added))

Moreover, the preamble of claim 11 provides additional support for this conclusion, as it also reads a lot like the abstract idea at issue. That is, the preamble recites that the claim is for "[a] computer implemented system *for populating a user profile based on existing user profiles*[.]" (*Id.*, col. 8:37-39 (emphasis added)); *see also Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1340 (Fed. Cir. 2017) (noting that it was not error for the district court to cite "to the preamble in its review of whether the claims are directed to an abstract idea[]" where the court's inquiry was "centered on determining the 'focus' of the claims[]")).

Additionally, Defendants persuasively note that the claims can easily be read in a way indicating that "[h]umans have been [performing the process utilized by the claimed system] since the beginning of time." (Tr. at 104) Defendants describe what seems like a very similar human analogue to claim 11's system, explaining how: (1) the "designation system" limitation is analogous to a "student walk[ing] into a library and tell[ing] the librarian she likes books by Tom Clancy[;]" (2) the "association system" limitation is an analogue to the librarian "group[ing] the student with other students who like Tom Clancy" and recalling that "many of

8

those other students also like James Patterson[;]" and (3) the "population system" limitation is an analogue to the librarian then considering that "the student would also like books by James Patterson and recommend[ing] one to the student[.]" (Defendants' Oral Argument Presentation, Slide 42) Obviously, the claims do not involve a librarian; instead, they are implemented by a computer system. But the fact that one could well articulate how computer-implemented claims otherwise might be performed by humans is helpful to Defendants' argument. *Cf. Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016) (explaining that "analyzing information by steps people go through in their minds, or by mathematical algorithms, without more, [is] essentially mental processes within the abstract-idea category[]"); *D&M Holdings Inc. v. Sonos, Inc.*, 309 F. Supp. 3d 207, 213-15 & n.4 (D. Del. 2018) (concluding that the claim at issue was directed to the abstract idea of "playing a recording according to one's tastes[,]" where, *inter alia*, portions of the specification characterized the invention as "the mere automation of a well-known manual process") (internal quotation marks and citation omitted).

As for Plaintiff's counter-argument that the presence of certain other claim elements shows that the claims are not directed to the abstract idea, that is a difficult argument to make—at least with regard to the claimed "population system," "association system" and "recommendation system." With regard to the "population system," for example, the patent only refers to it a few times; even in those instances, the system is described only generically or by way of functional language (i.e., without going into any detail about how such a system actually works). ('863 patent, cols., 2:22-29, 5:8 & 6:49-57 (stating that the population system "copie[s] the related programs . . . from existing profiles to the new user profile[]"); *see also* Defendants' Oral Argument Presentation, Slide 46; Tr. at 107) Similarly, the claimed "association system" is referenced infrequently, and then only in ways that make clear that its specific contours are of

little consequence. ('863 patent, cols. 5:8 & 6:5-29 (noting that such "association can be according to any known algorithm . . . whatever it may be . . .")) And the "recommendation system" is mentioned only once in any descriptive way in the specification—and there in a similarly brisk fashion. (*Id.*, col. 6:60-66 (noting that the recommendation system "could recommend" that a user watch a program on a particular network at a particular time, and that such a recommendation could be "accompanied with a 'strength' based on a user's . . . designated base characteristics[]"))

Perhaps the best argument Plaintiff makes here is that: (1) the claims at issue require that the system uses "cluster regions of existing user profiles" or (more specifically) "Vor[o]noi cluster regions[;]" and (2) those elements are not fairly captured by the abstract idea. (D.I. 14 at 22) It is true that the patent repeatedly notes the use of "Vor[o]noi cluster regions" when describing what the patented inventions are about. (*See also* '863 patent, Abstract (noting, in more "[s]pecifically" describing the invention, that the invention takes a new user profile and associates it "with a particular Vor[o]noi cluster region of existing user profiles"); *id.*, col. 1:14-16 ("Background of the Invention" section describing the present invention by stating that "[i]n particular, the present invention populates a new user profile based on existing user profiles grouped into Vor[o]noi cluster regions[]"); *id.*, cols. 1:64-2:03 ("Summary of the Invention" section explaining that a more specific explanation of the invention is that it is one that "associate[s] . . . a particular Vor[o]noi cluster region of existing user profiles[]" with a new user profile and then uses those existing profiles to populate the new user profile)) Yet the use of Voronoi clusters is really just one way of grouping "similar users" together, so that those users' characteristics can be attributed to a new user profile. And though the patent references the use of Voronoi cluster regions repeatedly, it does not do so in a way that suggests that the "character

10

as a whole" of the claims is directed to their use. *See Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015). Indeed, the use of Voronoi cluster regions is not even required by independent claim 11. ('863 patent, col. 8:37-47; *see also id.*, col. 3:36-37 (noting that the cluster regions described in the patent are "typically" Voronoi cluster regions))

In light of the above, the Court concludes that the claims are directed to the abstract idea put forward by Defendants. The Court will thus move on to *Alice*'s second step.

### C. *Alice*'s Step Two

Defendants argue that the '863 patent lacks an inventive concept at *Alice's* step two. For the reasons set out below, the Court agrees.

First, the Court cannot agree with Plaintiff's contrary assertion that "many of the features and components [of the claims] were unconventional even when taken alone." (D.I. 14 at 23) There is absolutely no factual support in the record for that proposition. (*See* D.I. 17 at ¶¶ 75-77); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (noting that there is no "inventive concept" if the patent recites only an abstract idea implemented using "generic" technology to "perform well-understood, routine, and conventional activities commonly used in industry") (citing *Alice*, 134 S. Ct. at 2359). Instead, the record evidence is all to the contrary. For example:

- With regard to the computerized system referenced in the claims, the patent explains that it "is intended to be representative of any consumer electronic device (e.g., set-top box, hard-disk recorder, DVD player, etc.) capable of storing information and executing commands." ('863 patent, col. 4:28-32)

- The patent says that the invention can be realized in "[a]ny kind of computer/server system(s)" using "hardware, software, or a combination" thereof. (*Id.*, col. 7:18-20; *see also id.*, cols. 4:38-41 & 7:33-40)

11

- The specification explains that when "designating base characteristics . . . any known method can be employed." (*Id.*, col. 5:53-54)

- The patent notes that the "user profiles" referenced in the claims can come from many different existing sources, such as "third parties [like] NIELSEN" or "other users who have purchased a similar consumer device" or "existing user profiles already stored in a database" or profiles "periodically downloaded/transmitted from a source (not shown)." (*Id.*, col. 5:11-18)

- With regard to the claims' use of clusters or Voronoi cluster regions, the specification explains that "Vor[o]noi cluster regions are well known in the art and many software programs exist for computing [them;]" and (2) when forming those cluster regions, "any known software program" and "any known algorithm" could be used. (*Id.*, cols. 3:42-46, 5:19-21 & 5:28-30)

- And, as noted above, the claimed "association system," "population system" and "recommendation system" are either not described with any specificity or are described in ways that underscore their generic nature.

Tellingly, in each of the three places in his declaration where Plaintiff's expert, Dr. Michael J. Pazzani, asserts that the claims' features/elements/components were "unconventional when taken alone" or were individually "unconventional" or were "previously unknown" in the field, that is literally all he says—his statements on this point are purely conclusory. (D.I. 15 at ¶¶ 31-33)[5]

---

[5] *See Move, Inc. v. Real Estate Alliance Ltd.*, 721 F. App'x 950, 957 (Fed. Cir. 2018) (finding that an expert's "conclusory declaration" that provided "no citations to support [a proffered legal conclusion] and contain[ed] no additional rationale" amounted to a "bald assertion" that did "not satisfy the inventive concept requirement"); *Kaavo Inc. v. Amazon.com Inc.*, 323 F. Supp. 3d 630, 644 (D. Del. 2018) (finding that an expert's testimony was insufficient to create a genuine issue of material fact regarding *Alice's* step two, as the testimony was conclusory and contrary to the intrinsic record, such that "[n]o reasonable fact finder could find for Plaintiff").

Second, the evidence cannot support Plaintiff's alternative argument that there is a genuine issue of fact as to whether "the '863 patent claims recite an ordered combination of [conventional] elements that" amounts to an inventive concept. (D.I. 14 at 23)[6]

This conclusion is substantiated in part by the declaration of Defendants' expert, Dr. Kevin Jeffay, who opines that as an ordered combination, the claims "still would have been well-known and conventional since the ordering of steps is purely conventional" and because the claims did not "improve[] computer capabilities" or "solve[] problems within the confines of computerized systems." (D.I. 17 at ¶¶ 79-80 (internal quotation marks omitted))

Just as important, however, is that Dr. Pazzani's declaration to the contrary—that "each asserted claim recites an unconventional ordered combination of elements that improved operations of existing computerized technologies[]"—does not suffice to raise a material factual dispute. (D.I. 15 at ¶ 35) In parsing Dr. Pazzani's declaration closely, it becomes clear that the key reason *why* Dr. Pazzani asserts that the ordered combination of elements amounts to an inventive concept is because the claim relies on a computer to speed up the claimed process of creating and populating a new user profile, so that such a profile can be created more efficiently. In that regard, Dr. Pazzani explains that the claims include an inventive concept because "categories (or clusters) *are created automatically through a computerized clustering* with the initial preferences of a profile derived by these clusters" and because the claims address the problem that prior art mechanisms for creating such user profiles were "too *time consuming and*

---

[6] *See McRO, Inc. v. Bandai Namco Games Am., Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016) ("Whether at step one or step two of the *Alice* test, in determining the patentability of a method, a court must look to the claims as an ordered combination, without ignoring the requirements of the individual steps."); *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016) (noting that "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces[]").

13

*impractical.*" (*Id.* at ¶¶ 31, 33 (emphasis added); *see also id.* at ¶ 36 (Dr. Pazzani asserting that the "key novelties are the use of *automated clustering* to create profiles in recommendation[]") (emphasis added); '863 patent, col. 1:41-46 (noting that in the relevant time period, computer electronic functionality "lack[ed an] efficient means for comparing and populating user profiles[]" in part because to "compare a new user profile to . . . [large quantities of] existing profiles [was] both time consuming and impractical[]")) Yet "if a patent's recitation of a computer amounts to a mere instruction to 'implemen[t]' an abstract idea 'on . . . a computer,' . . . that addition cannot impart patent eligibility." *Alice*, 134 S.Ct. at 2358 (internal citation omitted); *see also OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015) (claims that "describe the automation of [an abstract idea] through the use of generic-computer functions[]" do not promote an inventive concept); *Nice Systems Ltd. v. Clickfox, Inc.*, 207 F. Supp. 3d 393, 400 (D. Del. 2016) (noting that "neither a simple instruction to apply an abstract idea on a computer, nor claiming the improved speed or efficiency inherent with applying the abstract idea on a computer satisfies the requirement of an inventive concept.") (internal quotation marks and brackets omitted) (quoting *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015).[7]

---

[7] Dr. Pazzani also states that in the file history of this patent, the Examiner found that the prior art did not teach the combinations of limitations found in, *inter alia*, claim 11, and stated that this was "especially" so in light of the limitation of "'associating the new user profile with a cluster region of existing user profiles based on the base characteristics, and . . . populating the new user profile with defined characteristics from the existing user profiles.'" (D.I. 15 at ¶ 34; Tr. at 113) However, Plaintiff has not provided the Court with a copy of this portion of the prosecution history. And the fact that "Patent Office issued the patent[,]" standing alone, is not enough to demonstrate that the claims contain an inventive concept. Novelty is not eligibility. *SAP Am., Inc. v. Investpic, LLC*, 898 F.3d 1161, 1163 (Fed. Cir. 2018).

14

For the foregoing reasons, the Court concludes that at step two, there is no genuine dispute of material fact; the claims are devoid of an inventive concept.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Defendants' Section 101 Motion with regard to the '863 patent should be GRANTED. An appropriate Order will issue.