IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| S.I.SV.EL. SOCIETA ITALIANA PER LO SVILUPPO DELL' ELETTRONICA S.P.A, <br><br> Plaintiff, <br> v. <br><br> RHAPSODY INTERNATIONAL INC., <br><br> Defendant. | Civil Action No. 18-69-MN-CJB |
| S.I.SV.EL. SOCIETA ITALIANA PER LO SVILUPPO DELL' ELETTRONICA S.P.A, <br><br> Plaintiff, <br> v. <br><br> SPOTIFY USA INC., <br><br> Defendant. | Civil Action No. 18-70-MN-CJB |

Timothy Devlin, DEVLIN LAW FIRM LLC, Wilmington, DE, Attorney for Plaintiff.

David E. Moore, Bindu A. Palapura and Stephanie E. O'Byrne, POTTER ANDERSON & CORROON LLP, Wilmington, DE; Patrick Bageant, HOLLYSTONE LAW, Boise, ID, Attorneys for Defendant Rhapsody International Inc.

David E. Moore, Bindu A. Palapura and Stephanie E. O'Byrne, POTTER ANDERSON & CORROON LLP, Wilmington, DE; Stefani E. Shanberg and Michael J. Guo, MORRISON & FOERSTER LLP, San Francisco, CA, Attorneys for Defendant Spotify USA Inc.

**MEMORANDUM OPINION**

May 30, 2019
Wilmington, Delaware

BURKE, United States Magistrate Judge

Presently before the Court in this patent infringement case is Defendant Rhapsody International Inc. ("Rhapsody") and Defendant Spotify USA Inc.'s ("Spotify" and collectively, "Defendants") "Early Motion for Summary Judgment of Invalidity Pursuant to 35 U.S.C. § 101 ["Section 101"]" (the "Motion"), filed pursuant to Federal Rule of Civil Procedure 56. (D.I. 9)[1] Defendants argue that Plaintiff S.I.SV.EL. Societa Italiana per lo Sviluppo Dell'Elettronica S.p.A's ("Plaintiff") asserted United States Patent Nos. 7,412,202 (the "'202 patent"), 8,490,123 (the "'123 patent"), 7,035,863 (the "'863 patent"), 7,734,680 (the "'680 patent") and 8,321,456 (the "'456 patent") (collectively, the "asserted patents" or the "patents-in-suit") are directed to non-patent-eligible subject matter pursuant to Section 101. (D.I. 11) This Memorandum Opinion will address the Motion as it relates to the '680 patent only.[2] For the reasons set out below, the Court DENIES Defendants' Motion as it relates to that patent.

I.   BACKGROUND

   A.   Factual Background

The '680 patent is entitled "Method and Apparatus for Realizing Personalized Information from Multiple Information Sources." (D.I. 1, ex. 3 (the "'680 patent")) The '680

---

[1] The Motion was originally brought jointly by three Defendants (in three separate cases): Civil Action No. 18-68-MN-CJB (in which the Defendant was Rakuten Kobo Inc.), Civil Action No. 18-69-MN-CJB (in which the Defendant is Rhapsody) and Civil Action No. 18-70-MN-CJB (in which the Defendant is Spotify). (D.I. 9) Subsequent to oral argument on the instant Motion, Plaintiff and Defendant Rakuten Kobo Inc. settled their case, (Civil Action No. 18-68-MN-CJB, D.I. 26; D.I. 27); the other two cases remain pending. Unless otherwise noted, citations to the record herein will refer to the record in Civil Action No. 18-70-MN-CJB.

[2] The Court has previously issued Memorandum Opinions that address three of the asserted patents (the '202 patent, the '123 patent and the '863 patent), (D.I. 25-30), and will address the remaining patent in a subsequent Memorandum Opinion.

2

patent has 18 claims in total; three are independent claims (claim 1, claim 11 and claim 16) and 15 are dependent claims. (*Id.*, col. 10:20-12:64)

The technology at issue in the '680 patent "relates to browsing and/or searching various information sources, and more particularly to searching and/or presenting information from multiple information sources in a personalized and organized manner." (*Id.*, col. 1:8–11) In general, the asserted patent discloses "[a] system for a meta-browser [that] includes a receiver, an output device for displaying a virtual unified browsing space, and a selector input device for navigating the space and making selections therein." (*Id.*, Abstract) This meta-browser "presents personalized collections of information from multiple sources of different media types" (such as broadcast programming, electronic program guide information and the Internet) as "different media collections in the unified browsing space, which can be easily and intuitively browsed." (*Id.*) The user's browsing experience is improved by the ability to generate personalized recommendations based on a profile of the user's interests (including through, among other things, the use of "[c]ollaborative filtering"). (*Id.*)

The '680 patent explains that, at the time of the invention, users were able "to browse [via web browsers and electronic program guides] various information sources[,] such as Web sites, television program listings, and music collections." (*Id.*, col. 1:13-15) However, the searches were typically limited to only "one type of collection of information." (*Id.*, col. 1:16-17) For example, a user interested in information about a particular television program could search the Web via a search engine for information about the program, but the user would typically receive only a listing of websites related to the program (and would not receive, for example, the time when the program was being shown in the user's viewing area). (*Id.*, col. 1:17-24) Although searching tools improved, (*see id.*, col. 1:26-29), the patent states that there still remained a need

for an invention that could: (1) "improve the usefulness of searching by providing an integrated approach to specifying and searching multiple information resources[,]" (*id.*, col. 1:38-40); and (2) "use existing standards and a plethora of new component technologies to provide a search tool that gives the user greater access to a variety of different content types from a variety of different sources in a personalized, easy and intuitive way[,]" (*id.*, col. 1:42-46). The inventions claimed in the '680 patent were said to meet those needs. (*Id.*, cols. 1:50-2:16)

### B. Procedural Background

The Court hereby incorporates by reference the summary of the procedural background of this matter, which was set out in its March 8, 2019 Memorandum Opinion ("March 8, 2019 MO"). (D.I. 25 at 4)

## II. STANDARD OF REVIEW

The Court also incorporates by reference the standard of review applicable to summary judgment motions and the legal standards relating to Section 101, which were also set out in the March 8, 2019 MO. (*Id.* at 4-11)

## III. DISCUSSION

In resolving Defendants' Motion, the Court will first discuss which claims will (and will not) be specifically addressed herein. Thereafter, it will analyze the relevant claim under both steps of the test for patent eligibility set out in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S.Ct. 2347 (2014).

### A. Claim at Issue

In its Complaint, Plaintiff alleged infringement of "at least claim 16 of the '680 patent[.]" (D.I. 1 at ¶ 76) In their opening brief, Defendants addressed each of the patent's 18 claims and moved that all of these claims be found ineligible. (*See* D.I. 11 at 34) Plaintiff, in its answering

brief, then made specific reference only to the content of independent claim 16 in explaining why all of the patent's claims were patent eligible. (D.I. 14 at 28-31) In light of this, the Court will address only claim 16 herein, understanding that Plaintiff's arguments for eligibility as to all of the patent's claims rise and fall on the arguments it made with regard to this particular claim. *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365-66 (Fed. Cir. 2018); *TMI Sols. LLC v. Bath & Body Works Direct, Inc.*, C.A. No. 17-965-LPS-CJB, 2018 WL 4660370, at *6 (D. Del. Sept. 28, 2018).

Claim 16 recites:

> 16. A computer program product comprising a computer readable medium having program logic recorded thereon for enabling a computer-enabled apparatus to display personalized information for a user from multiple information sources, comprising:
>
> a populater for populating a virtual library with a plurality of different virtual media collections in accordance with a user profile, wherein the virtual library is populated with different types of media obtained from different media sources; and
>
> a browser for browsing the virtual library by moving between the plurality of different media collections under user control;
>
> a search engine for searching the virtual library under user control; and
>
> a filter for filtering the results of the searching step in accordance with the user profile and said browsing step, wherein said filtering comprises explicit and implicit filtering, wherein said explicit filtering provides filtering of information from said plurality of different media collections and said implicit filtering draws from collaborative data among said plurality of different media collections and similar user profiles;
>
> a prioritizer for prioritizing results of the filtering step; and

> an updater for updating the user profile in accordance with
> at least one selection of the results of the filtering step,
> wherein said updating is reflected in a ratio in responding to
> said user's current programming choice or specific requests.

('680 patent, col. 12:25-53)

### B. *Alice*'s Step One

Defendants assert that the claims of the '680 patent are directed to the abstract idea of "organizing content based on the user's preferences." (D.I. 11 at 34) In response, Plaintiff does not contest that "organizing content based on the user's preferences" is an abstract idea; instead, it argues that the claims are not actually "directed to" such an idea. (D.I. 14 at 28) In that regard, Plaintiff asserts that by "bring[ing] together numerous unconventional elements and steps previously unknown in the field of computerized browsing and recommendation technology[,]" (*id.* at 28), the patent-in-suit is instead "directed to an invention that improves a computerized browsing and recommendation process[,]" (*id.* at 29 (emphasis omitted)).

To support its position at step one, Defendants argue that in various portions of the '680 patent's specification, the patentees used broad terminology that makes it sound like the basic thrust of their invention *is* drawn to the general concept of "organizing content based on the user's preferences." (D.I. 11 at 35; Defendants' Oral Argument Presentation Slides at 72) These include the following:

- In the "Field of the Invention" section, the patent states that "invention relates to browsing and/or searching various information sources, and more particularly to searching and/or presenting information from multiple information sources in a personalized and organized manner." ('680 patent, col. 1:7-11)

- In the "Detailed Description of the Preferred Embodiment" section, the patent begins its description of the embodiment by stating that it embodies a "meta-browser [that] presents personalized collections of information from multiple sources

6

of different media types in a single browsing space[,]" giving the user "greater access to a variety of different content types in a personalized, easy and intuitive way." (*Id.*, col. 2:34-39, 50-52) Near the end of that section, the patentee sums up by saying that the "various methods and apparatus described herein enhances a user's browsing experience by providing easy access to relevant information . . . in a personalized, easy and intuitive way." (*Id.*, col. 10:4-8)

- At times, the specification analogizes the meta-browser to a virtual library with several floors, each of which have various stacks or shelves in which information is organized by its type and content. (*See id.*, cols. 2:53-3:15, 5:11-12)

Moreover, although it is not disputed that claim 16 is to a computerized product, (Tr. at 131), Defendants argue that the claim can easily be analogized to the way a physical library has always worked. That is, they argue that the claim's limitations are analogous to: (1) a librarian stocking a library's shelves with children's books and DVDs (the "populater" limitation); (2) a child then browsing the library, moving between the book and movie shelves (the "browser" limitation); (3) the child then asking the librarian for a new book to read (the "search engine" limitation); (4) the librarian (who knows that the child has previously told her that she likes books with pictures) selecting books liked by other children of the same age (the "filter" limitation); (5) the librarian handing the books in the stack with "The Cat in the Hat" on top to the child and suggesting the child will like that particular book (the "prioritizer" limitation); and (6) the librarian, after seeing the child select "The Cat in the Hat," then noting to herself that half of the books the child selected from the library were Dr. Seuss books (the "updater" limitation). (Defendants' Oral Argument Presentation Slides at 73; *see also* D.I. 11 at 37).

Defendants also argue that claim 16 does not claim "any particular device or specialized hardware" that might suggest that the claim is instead directed to such hardware. (D.I. 11 at 35, 37; D.I. 16 at 34-35) *see also Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253,

1260 (Fed. Cir. 2016) (explaining that even if a claimed invention requires "the use of concrete, tangible components such as telephone unit and a server," the claim will not be seen to be directed to those elements at step one if "the specification [makes] clear that the recited physical components merely provide a generic environment in which to carry out the abstract idea" at issue) (internal quotation marks and citation omitted). And it is true that while the claim makes use of a populater, a browser, a search engine, a filter, a prioritizer, and an updater, ('680 patent, col. 12:30-53), much of what the patent tells us about those components does suggest that they could be implemented by using any number of forms of generic computer hardware, (D.I. 17 at ¶ 108). This seems evident, for example, when the specification explains that the receiver (which the meta-browser runs on) "may be implement[ed] in any of a variety of ways," ('680 patent, col. 5:20-22), or that "[t]he selector 334 is any suitable device," (*id.*, col. 5:36).

While Defendants make some good points above, the Court also acknowledges Plaintiff's argument that it seems a touch simplistic to state that claim 16 is directed only to "organizing content based on user preferences." (*See* D.I. 14 at 29); *see also In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016) (cautioning courts to "avoid oversimplifying the claims" at step one). After all, the claim on its face clearly has greater nuance than that. One example cited by Plaintiff is that the claimed filter utilizes, *inter alia*, "implicit filtering[,]" which "draws from collaborative data among said plurality of different media collections and similar user profiles[.]" ('680 patent, col. 12:40-47) The specification talks about this implicit filtering process in some detail, such as when it explains how the claimed computer program product could utilize a "collaborative filtering database" (a "sizable database of profiles of users who visit the Web sites hosted by the server") as part of the implicit filtering step, and how the product could draw information from profiles of similar users found in the database to identify

8

"possible user interests" that could be useful to the user. (*Id.*, cols. 7:23-8:21; *see also id.*, col. 1:38-46 (the specification emphasizing that the invention is in part meant to provide a way to give the user "greater access to a variety of different content types from a variety of different sources in a personalized . . . way")) Defendants' articulation of the abstract idea at issue tends to gloss over this sort of detail.

The step one question is thus a difficult one. In light of that, the Court will assume *arguendo* that the claims are directed to the abstract idea put forward by Defendants, and will address Plaintiff's concerns about what else there is in the claim at step two. *Cf. Enfish, LLC v. Microsoft Corp.*, 822 F.3d. 1327, 1339 (Fed. Cir. 2016) (noting that there may sometimes be "close calls" about how to characterize what a claim is directed to at *Alice* step one, and in such scenarios, an analysis of whether the claims amount to an improvement to computer technology could take place at step two).

### C. *Alice*'s Step Two

At step two, the key question is whether the elements of claim 16, either considered individually or taken together, amount to more than simply well-understood, routine and conventional technology from the perspective of a person of skill in the art ("POSITA") at the time of the invention.

Defendants argue that they do not. In making that case, Defendants cite to portions of the specification that suggest that various individual claim elements were well-known at the time. (*See* D.I. 11 at 37-39; D.I. 17 at ¶ 114) For example, the patent notes that:

- New user profiles, if needed, are established in "any suitable manner," suggesting that these profiles are not themselves inventive. ('680 patent, col. 8:57-61)

9

- A user can use the browser to select items in "any convenient manner," which suggests that this aspect of the browser is non-inventive. (*Id.*, col. 4:26-31)

- "Suitable algorithms and software for performing data collection and filtering and for maintaining databases such as the adaptive user profile database **328** and the collaborative filtering database **316** [are] well known to persons of ordinary skill in the art." (*Id.*, col. 8:22-26)

- Such software can implicate "Bayesian probability-based recommendation models," which are described in many different articles cited in the patent. (*Id.*, col. 8:22-44)

- Explicit or implicit filters are described as being able to act on information requested from servers on the World Wide Web, which may be obtained using an Internet browser using "well known" processes. (*Id.*, col. 6:38-45)

- Almost nothing is said in the patent about what the prioritizer or updater is or how they do what they do. (*Id.*, cols. 3:54-56, 6:9-11, 9:66-10:3)

Defendants' expert, Dr. Kevin Jeffay, opined that in his view, references like these indicate that there is "nothing in the claims . . . beyond off-the-shelf, generic computer technology that performs conventional functions, all of which would have been well-known to a POSITA at the time of the '680 patent's filing." (D.I. 17 at ¶ 114)

Dr. Jeffay also states that the literal order of the claim limitations is logical and not inventive. Here, he opines this is so because "each claim simply recite[s] the basic idea of organizing content based on user preferences with a conventional ordering of steps in a wholly conventional manner[;]" this, he says, is "just the order in which one must perform steps to organize content based on user preferences[]" and "[p]erforming the steps in a different order would not be logical." (*Id.* at ¶ 116)

But Plaintiff counters that it is the "'ordered combination'" of these claim elements, taken together, that demonstrates that the claim includes an inventive concept. (D.I. 14 at 30) In that regard, Plaintiff's expert, Dr. Michael J. Pazzani, explains that at the time of the invention (1999), there existed recommendation systems based on either analyzing content or "'collaborative filtering' in which recommendations are based on similar users" but "there was no consensus on the best way to" combine both, resulting in a better system. (D.I. 15 at ¶ 49) Dr. Pazzani, whose work is cited in the patent-in-suit, also states that, at the time of the invention, he was perplexed as to how to "mak[e] recommendations for different types of objects, such as different types of media[;]" he opines that the use of multiple media types, especially in explicit filtering, was unconventional. (*Id.* at ¶¶ 50-51) He concludes that the invention's combination of "a plethora of new component technologies . . . provide a tool that gives the user greater access to a variety of different content types from a variety of different sources in a personalized, easy and intuitive way[]" and that it therefore represented "a considerable advance in the field of computerized browsing and recommendation technology[]" that "improved operations of existing computerized technologies." (*Id.* at ¶¶ 54-55; *see also* Tr. at 137)

Defendants fault Dr. Pazzani's "ordered combination" arguments for being "conclusory." (D.I. 16 at 36) To be sure, Dr. Pazzani's arguments on this point are not lengthy. But they are no less fulsome than Dr. Jeffay's arguments to the contrary. (*See* D.I. 17 at ¶ 116) And they do contain some factual assertions. It might just be, for example, that (as Dr. Pazzani states) at the time of the invention, it was decidedly unconventional for a computer-based meta-

browser/recommendation system to use both "explicit filtering" and "implicit filtering" at the same time. (D.I. 15 at ¶ 49)[3]

In the Court's view, Dr. Pazzani's opinion demonstrates that there is a material dispute of fact as to the conventionality of the ordered combination of claim limitations. *See Berkheimer*, 881 F.3d at 1368 (stating that "[t]he question of whether a . . . combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact[]" and that only "[w]hen there is no genuine issue of material fact regarding whether the . . . claimed combination is well-understood, routine, conventional to a skilled artisan in the relevant field [can the] issue can be decided on summary judgment as a matter of law[]"); *see also Vaporstream, Inc. v. Snap Inc.*, No. 2:17-cv-00220-MLH (KSx), 2018 WL 1116530, at *6 (C.D. Cal. Feb. 27, 2018) (denying the defendant's motion for summary judgment on Section 101 grounds because the parties' experts offered conflicting testimony with regard to "what was well-understood, routine, and conventional at the time of the invention"). That, in and of itself, would be sufficient to suggest that denial of the Motion is appropriate.

But Plaintiff's case is also helped by the record it made on the issue of preemption. The Supreme Court of the United States has stated that the "concern that drives th[e] exclusionary

---

[3] The Court does not agree with Defendants that the "only supposed point of novelty Dr. Pazzani describes—combining types of recommendation systems and using different media types—amounts to limiting the analyzed information by content or by source." (D.I. 16 at 37 (citing *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1355 (Fed. Cir. 2016)) The claimed filter's use of both explicit and implicit filtering, for example, does not strike the Court as a limitation based on content or source; it seems more like a limitation based on the use of *multiple techniques for* filtering content. *Cf. Elec. Power Grp., LLC.*, 830 F.3d at 1352-55 (finding the claims at issue did not contain an inventive concept because they did not require, *inter alia*, new techniques for analyzing information, and instead merely required the selection and manipulation of known sources and types of information relating to an electronic power grid, such as power system data sources and data streams).

principle [regarding the non-eligibility of abstract ideas i]s one of pre-emption[,]" *Alice*, 134 S. Ct. at 2354, in that if a claim is so abstract so as to "pre-empt use of [the claimed] approach in all fields, and would effectively grant a monopoly over an abstract idea[,]" it would not be patent eligible, *Bilski v. Kappos*, 561 U.S. 593, 612 (2010). Although Dr. Jeffay asserted in his declaration that the "claims of the '680 patent foreclose future innovation by applying the abstract idea of organizing content based on user preferences to a nearly limitless variety of circumstances[,]" (D.I. 17 at ¶ 118), in his deposition, Dr. Jeffay was forced to acknowledge that claim 16 does not capture many different ways of "organizing content based on user preferences," (D.I. 21, ex. B at 85-86 (recognizing that one could organize content based on user preferences without populating a library based on a user profile); *id.* at 88 (same, as to the required claim element of browsing a virtual library); *id.* at 93-94 (agreeing that one could perform the abstract idea without updating a user profile based on a user's selection of results); *id.* at 103-04 (noting that one could perform the abstract idea by only doing one of explicit or implicit filtering and thus be outside of the claim's scope); *id.* at 105 (agreeing that performing the abstract idea by not using a plurality of different media collections would put one outside of the claim's scope); *id.* at 106 (same, as to the claim's required use of similar user profiles regarding implicit filtering)). Indeed, Dr. Jeffay acknowledged that there is "lots of verbiage here in [c]laim 16 that doesn't appear in the . . . statement of the abstract idea[.]" (*Id.* at 109) And when flatly asked at one point in his deposition whether claim 16 "disproportionately tie[s] up the use of the idea of organizing content based on user preferences[,]" Dr. Jeffay initially replied: "I haven't done that analysis for just [c]laim 16." (*Id.* at 111)[4] This record suggests that

---

[4] Dr. Jeffay later explained that his view is that the claims of the patent raise preemption concerns to "differing degrees" based on the specific content of each claim. (D.I. 21,

13

the patent claims may not be unduly preemptive nor grant a monopoly over the proffered abstract idea.

For all of these reasons, the Court finds there to be a genuine dispute of material fact as to whether the claims of the '680 patent contain an inventive concept. This precludes a grant of summary judgment.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Defendants' Motion with regard to the '680 patent should be DENIED.

---

ex. B at 112) Later, when asked for a second time if he thought that claim 16 disproportionately tied up the use of the abstract idea, Dr. Jeffay replied "I would say yes" without further explaining *why* that was. (*Id.* at 113) Since Dr. Jeffay had admittedly never "done [the preemption] analysis for just [c]laim 16" prior to his deposition, he must have come up with that (factually unsupported) conclusion on the fly. (*Id.* at 111, 113)