IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| T-JAT SYSTEMS 2006 LTD., <br><br> Plaintiff, <br><br> v. <br><br> EXPEDIA, INC. (DE) and ORBITZ WORLDWIDE, INC., <br><br> Defendants. | C.A. No. 16-cv-581-RGA |

ORDER

Presently before the Court is the issue of whether two of T-Jat's employees, Dr. Golobrodsky and Mr. Vershavsky, may access documents designated Attorney's Eyes Only (AEO). I have considered the parties' papers. (D.I. 76, 77, 82, 84). I held a discovery conference on October 15, 2018.

Inherent in a court's power under Federal Rule of Civil Procedure 26 is the ability to restrict an individual's access to confidential information when there is "an unacceptable opportunity for inadvertent disclosure." *See U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984). The Federal Circuit has made clear that limits to attorney access should be judged on "a counsel-by-counsel basis, and cannot be determined solely by giving controlling weight to the classification of counsel as in-house rather than retained." *Id.* "[T]he counsel-by-counsel determination should turn on the extent to which counsel is involved in 'competitive decisionmaking' with its client." *In re Deutsche Bank Trust Co. Ams.*, 605 F.3d 1373, 1378 (Fed. Cir. 2010). Competitive decisionmaking is "shorthand for a counsel's activities,

association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *Id.* (quoting *U.S. Steel*, 730 F.2d at 1468 n.3). Even if a court is satisfied that a risk of inadvertent disclosure or misuse exists, the court "must balance this risk against the potential harm to the opposing party" in deciding the scope of the protective order. *Id.* at 1380.

Although T-Jat does not have in-house counsel and is requesting access for non-attorney employees, I believe the principles set out in *U.S. Steel* still apply. *See, e.g.*, *McAirlaids, Inc. v. Kimberly-Clark Corp.*, 299 F.R.D. 498, 500–01 (W.D. Va. 2014). Whether "an unacceptable opportunity for inadvertent disclosure" exists depends on the extent to which Dr. Golobrodsky and Mr. Vershavsky are involved in competitive decisionmaking at T-Jat. This risk of inadvertent disclosure should then be balanced against the potential harm to T-Jat if Dr. Golobrodsky and Mr. Vershavsky cannot access the AEO materials.

T-Jat suggests a different framework altogether. T-Jat cites to three cases, all by the same judge, that say essentially the same thing. That is, it was the practice of the judge to give at least one person "from the company" access to all the documents. (D.I. 77 at 3). It may be that all three cases reached the right result, but I think T-Jat attempts to make the judge's practice into a legal rule. I do not think the case law supports such a finding. For example, in *Safe Flight Instrument Corp. v. Sundstrand Data Control Inc.*, 682 F. Supp. 20 (D. Del. 1988), the court cites numerous cases for the proposition that a party's "technical information" would only be disclosed to opposing "trial counsel" and "independent experts" despite the opposing party's request that it be submitted to at least one employee of the opposing party. *Id.* at 22. Likewise, other courts in more recent cases have declined to allow client employees access to confidential

information when those employees are competitive decisionmakers. *See McAirlaids*, 299 F.R.D. at 501; *3M Co. v. ACS Indus., Inc.*, 2015 WL 13484695, at *2–3 (D. Minn. Dec. 2, 2015); *Wanke Cascade Distrib. Ltd. v. Forbo Flooring, Inc.*, 2014 WL 12648465, at *2–3 (D. Or. Apr. 11, 2014).

Here, unlike in much of the case law, the parties are not direct competitors. *See, e.g., Safe Flight*, 682 F. Supp. at 21. Therefore, additional analysis is required to determine what harm to Defendants, if any, might result from inadvertent disclosure.[1] T-Jat argues that neither Dr. Golobrodsky nor Mr. Vershavsky are competitive decisionmakers "in the sense of any competition with Expedia." (D.I. 77 at 2). I disagree. The parties' market relationship, though relevant, is not dispositive of whether T-Jat's employees are competitive decisionmakers. *See Blackbird Tech LLC v. Serv. Lighting & Elec. Supplies, Inc.*, 2016 WL 2904592, at *4 (D. Del. May 18, 2016). I think the key question is whether "Defendants' trade secrets and other sensitive information could potentially be of value to [T-Jat]." *R.R. Donnelley & Sons Co. v. Quark, Inc.*, 2007 WL 61885, at *2 n.2 (D. Del. Jan. 4, 2007).

Defendants' "core technical documents," produced as an example of materials that Defendants would designate as AEO, show a detailed presentation on Expedia's backend systems. (D.I. 82 at 1, Exs. 7–10). Defendants assert, "[I]t will be challenging for T-Jat not to use that information in connection with its own business."[2] (*Id.* at 1). On the other hand, T-Jat

---

[1] I believe this is a preliminary issue. If inadvertent disclosure by T-Jat's employees poses no risk of harm to Defendants, Defendants will fail to show good cause for the proposed protective order irrespective of the employees' decisionmaking power. This is consistent with the Federal Circuit's definition for competitive decisionmaker, which asks to what extent one influences the client's decisions in light of "information about a *competitor*." *U.S. Steel*, 730 F.2d at 1468 n.3 (emphasis added).

[2] In an earlier letter Defendants also argued that "the technology Expedia will disclose is the focus of at least one of the products T-Jat markets," and "T-Jat has long been involved in litigation and licensing involving the asserted patents and has said that it intends to bring additional lawsuits." (D.I. 76 at 1–2). During the discovery conference, however, T-Jat denied both allegations and Defendants indicated that

argues that there is no risk of competition, because it "markets a platform to enable simultaneous web access from multiple devices and communication channels" while Expedia provides "travel-related services and software." (D.I. 77 at 1).

Based on the present record, it is not clear exactly what value T-Jat may derive from Defendants' confidential information. But, it appears that both T-Jat and Expedia provide technology-based products/services. Given the fact that this is a patent infringement action, it seems likely that, even if T-Jat and Expedia do not have competing products/services, they employ overlapping technology in those products/services. Therefore, the parties share an interest in the same technological field. T-Jat would gain a competitive advantage if it inadvertently used knowledge from Defendants' AEO materials in its own research and development.[3] Therefore, I think Defendants have shown a sufficient likelihood of harm from inadvertent disclosure to require further analysis of whether Dr. Golobrodsky and Mr. Vershavsky are competitive decisionmakers.

I believe Dr. Golobrodsky is a competitive decisionmaker. Dr. Golobrodsky is T-Jat's Chief Science Officer and oversees "technical operations." In addition, he is a founder, shareholder, and listed inventor on both asserted patents. T-Jat represented during the discovery conference that it has about ten employees in total, including employees at related companies. It seems probable that Dr. Golobrodsky plays a large role in most, if not all, of T-Jat's technical decisions. Therefore, I find it likely that Dr. Golobrodsky has both the expertise and

---

they know very little about T-Jat's business. I do not think T-Jat gave a clear explanation of its business in the papers or during the discovery conference.

[3] T-Jat represented at the discovery conference that its patent portfolio with the asserted patents is "mature," and that the only patent it is currently prosecuting covers an unrelated technology. Therefore, any risk of competitive advantage will likely relate to T-Jat's use, rather than patenting, of Defendants' technology.

4

management control to inadvertently use the information from Defendant's AEO materials to T-Jat's competitive advantage.

Mr. Vershavsky does not appear to be a competitive decisionmaker, at least to the same extent as Dr. Golobrodsky. Mr. Vershavsky is a shareholder in a related company and a "qualified technician." (D.I. 77 at 2). He works at T-Jat "in the capacity of operations, high level quality assurances, and overall logistical support," and "is not involved in any management capacity." (*Id.*). Unlike Dr. Golobrodsky, Mr. Vershavsky seems to have limited control over which technologies T-Jat pursues and how that technology is monetized.

T-Jat argues that Dr. Golobrodsky and Mr. Vershavsky need to have access to the AEO materials to effectively decide "case strategy" and "assist in the technical aspects of the case." (D.I. 77 at 2). "The risk of inadvertent disclosure cannot be overcome by the mere contention that access to confidential information is necessary for case management." *R.R. Donnelley*, 2007 WL 61885, at *1. Further, I doubt that either Dr. Golobrodsky or Mr. Vershavsky are uniquely qualified to "assist in the technical aspects of the case"—the same role could be played by a third-party expert. Although Mr. Vershavsky does not appear to have the same decisionmaking power as Dr. Golobrodsky, I believe, given his technical expertise and T-Jat's small size, there is still a risk that he will inadvertently apply the technical knowledge acquired from Defendants' AEO materials to T-Jat's advantage. "It is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so." *In re Deutsche Bank*, 605 F.3d at 1378 (citation and brackets omitted). Therefore, on balance, I think the risk of harm to Defendants from inadvertent disclosure outweighs any harm to T-Jat from not having Dr. Golobrodsky and Mr. Vershavsky access the confidential information. It should not be an unacceptable hardship for T-Jat to rely

on litigation counsel and outside experts to review the AEO materials. "This is a necessary consequence of achieving a balance between full disclosure in discovery and protection against economic injury." *McAirlaids*, 299 F.R.D. at 501–02.

The parties should resubmit the proposed protective order in conformity with this Order.

IT IS SO ORDERED this 19 day of October 2018.

*Richard G. Andrews*
United States District Judge