# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| S.I.SV.EL. SOCIETA ITALIANA PER LO SVILUPPO DELL'ELETTRONICA S.P.A, | |
| Plaintiff, | C.A. No. 1:18-cv-00069-MN-CJB |
| v. | |
| RHAPSODY INTERNATIONAL INC., | **JURY TRIAL DEMANDED** |
| Defendant. | |
| S.I.SV.EL. SOCIETA ITALIANA PER LO SVILUPPO DELL'ELETTRONICA S.P.A, | |
| Plaintiff, | C.A. No. 1:18-cv-00070-MN-CJB |
| v. | |
| SPOTIFY USA INC. | **JURY TRIAL DEMANDED** |
| Defendant. | |

## STIPULATED PROTECTIVE ORDER

IT IS HEREBY STIPULATED AND AGREED, pursuant to Rule 26(c) of the Federal Rules of Civil Procedure and subject to the approval of the Court, by and between the parties and by their respective undersigned counsel, that this Stipulated Protective Order shall govern the handling of documents, depositions, deposition exhibits, interrogatory responses, admissions, and any other information produced, given, or exchanged by and among the Parties and any non-parties to each of the respective above-captioned actions. Although submitted jointly in connection with each of the above-captioned actions, each such action shall be treated as separate and independent in terms of the protection of a Party's confidential information, and, unless specifically provided for in this Stipulated Protective Order, nothing in this Stipulated

Protective Order shall be construed to permit access by a Party in one of the above-captioned actions to the confidential information produced by a Party in another of the actions absent agreement of the producing Party and/or separate order of the Court.

To expedite the flow of discovery material, to facilitate the prompt resolution of disputes over confidentiality of discovery materials, to adequately protect information the Parties are entitled to keep confidential, to ensure that only materials the parties are entitled to keep confidential are subject to such treatment, and to ensure that the Parties are permitted reasonably necessary uses of such materials in preparation for and in the conduct of trial, pursuant to Fed. R. Civ. P. 26(c),

IT IS HEREBY STIPULATED AND ORDERED THAT:

## DEFINITIONS

1.      "Party": any party to this action, including all of its officers, directors, employees, consultants, retained experts and consultants, and outside counsel (and their support staff).

2.      "Material": all information, documents, items, and things produced, served, or otherwise provided in this action (whether paper, electronic, tangible or otherwise) by the parties or by non-parties.

3.      "Producing Party": a Party or non-party that produces Material in this action.

4.      "Receiving Party": a Party that receives Material from a Producing Party.

5.      "Designating Party": a Party or non-party that designates Material as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE."

6.      "Source Code": HIGHLY CONFIDENTIAL Material representing computer code, software code, hardware code, machine code, pseudo code, scripts, assembly code, object code, and human-readable programming language text that defines software, firmware, electronic hardware descriptions, executable software, or any listings, printouts, release notes and/or descriptions of any of the foregoing, including associated comments and revision histories.

7.    "CONFIDENTIAL Material":  Material that contains or reflects confidential, proprietary, and/or commercially sensitive information.  Copies, abstracts, compilations, summaries, and extracts of Materials designated as CONFIDENTIAL, as well as testimony that contains or recites such CONFIDENTIAL material, will also be treated as CONFIDENTIAL Material.

8.    "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY Material": Material that contains or reflects information that is extremely confidential and/or sensitive in nature such that unrestricted disclosure to others would create a substantial risk of serious injury that could not be avoided by less restrictive means.  This designation also includes Material obtained from a non-party pursuant to a Nondisclosure Agreement ("NDA"), unless the non-party permits a different designation in writing.  Copies, abstracts, compilations, summaries, and extracts of Materials designated as HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY, as well as testimony that contains or recites such HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY material, will also be treated as HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY Material.

9.    "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE Material": Source Code and copies, abstracts, compilations, summaries, extracts of, and materials comprising or including Source Code.

10.    "Designated Material": Material that is designated "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" and all copies, abstracts, compilations, summaries, and extracts of such Material, as well as testimony that contains or recites such material.

11.    "Counsel of Record": (i) Outside counsel who appear on the pleadings as counsel for a Party, and (ii) partners, associates, and employees of such outside counsel to whom it is reasonably necessary to disclose the information for this litigation, including supporting personnel employed by the attorneys, such as paralegals, legal translators, legal secretaries, legal

3

clerks, and shorthand reporters. "Counsel of Record" does not include any person who is an employee, director, or officer of a Party or a Party's affiliates even if that person appears on the pleadings as counsel for a Party.

12.     "Outside Consultant": a person who has been retained by a Party or its Counsel of Record to serve as an expert witness or as a consultant in this action and who is not a current or anticipated: (i) officer, director, or employee of a Party or of a Party's competitor, or (ii) consultant involved in product and/or process design or development for a Party or for a Party's competitor.

13.     "Professional Vendors": persons or entities unaffiliated with a Party or a competitor of a Party that provide litigation support services (e.g., photocopying, videotaping, translating, preparing transcripts, exhibits, or demonstrations, organizing or processing data) and their employees and subcontractors. This definition includes a professional jury or trial consultant retained in connection with this action. Professional Vendors do not include mock jurors and do not include consultants who fall within the definition of Outside Consultant.

14.     "Relevant Technology": all technology relevant to the subject matter of United States Patent Nos. 7,734,680 and 8,490,123 (collectively, the "Patents-in-Suit") and the technology accused of infringing the Patents-in-Suit.

## SCOPE

15.     Compliance with Applicable Rules Governing Confidentiality. This Order does not confer blanket protections on all disclosures or responses to discovery, and the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under applicable legal principles or as otherwise defined herein as Designated Material.

## ACCESS TO DESIGNATED MATERIAL

16.     Access to CONFIDENTIAL Material. Only the following persons are permitted to have access to CONFIDENTIAL Material:

(a)     employees of the Receiving Party to whom disclosure is reasonably

necessary for the management, supervision, or oversight of this litigation and who have signed the "Agreement to Be Bound by Protective Order" attached as Exhibit A;

(b)    persons who appear on the face of Designated Material as an author, addressee or recipient thereof;

(c)    Counsel of Record;

(d)    Outside Consultants and their supporting personnel to whom it is reasonably necessary to disclose the information for this litigation, subject to the procedures set forth in paragraphs 20-22;

(e)    the Court and its personnel;

(f)    court reporters;

(g)    a mediator engaged or assigned to mediate this matter, and his or her staff, who have signed the "Acknowledgment and Agreement to be Bound by Protective Order" attached as Exhibit A and the "Certification of Outside Consultant" attached as Exhibit B; and

(h)    Professional Vendors (excluding mock jurors) to which disclosure is reasonably necessary for this litigation and a representative of which has signed the "Acknowledgment and Agreement to be Bound by Protective Order" attached as Exhibit A.

17.    <u>Access to HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY Material</u>. Only the persons identified in Paragraph 16(b)-(h) are permitted to have access to HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY Material. However, notwithstanding anything to the contrary in this Order, three (3) in-house counsel for Defendant and Plaintiff to whom disclosure is reasonably necessary for the management, supervision, or oversight of this litigation, who are not involved in competitive decision-making on behalf of a Party or a competitor of a Party, and who have signed the "Agreement to Be Bound by Protective Order" attached as Exhibit A are permitted to have access to all settlement, licenses agreements,

covenants not to sue or any other agreement or contract conveying any rights in the  Patents-In-Suit as well as any documents evincing the scope of such agreement or contract (e.g., the number, volume, and/or type of licensed products) notwithstanding the designation of those documents.

18.     Access to HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE Material. Only the persons identified in Paragraph 16(b)-(h)  are permitted to have access to HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE Material.

19.     Acknowledgments to Be Bound.  Each person to whom Designated Material may be disclosed and who is required to sign the "Acknowledgment and Agreement to Be Bound by Protective Order" and/or the "Certification of Outside Consultant" must do so prior to reviewing Designated Material.  Counsel of Record for the Receiving Party must retain each original executed document and, on written request, must provide copies to Counsel of Record for all other Parties after the termination of this action.  The identification of an individual pursuant to this Order does not make that individual subject to deposition or any other form of discovery.

## DISCLOSURE TO OUTSIDE CONSULTANTS

20.     Notice.  Before disclosing another party's Designated Material to an Outside Consultant, a Receiving Party must first provide written notice to Counsel of Record (or outside counsel for a non-Party) for the Designating Party.  The notice must include: (a) the Outside Consultant's name, business title, business address, and business or profession; (b) a current CV; (c) the Outside Consultant's previous or current relationship (personal or professional) with any of the Parties and/or the Designating Party, their predecessors, or their successors in interest; (d) a list of cases in which the Outside Consultant has testified (at trial or deposition) within the last seven (7) years; (e) a list of each company for which the Outside Consultant has consulted or that has employed the Outside Consultant, including in connection with a litigation, within the last seven (7) years; (f) an identification of all pending patent applications on which the Outside Consultant is named as an inventor, in which the Outside Consultant has any ownership interest,

or as to which the Outside Consultant has had any involvement in preparing, prosecuting, drafting, editing, amending, or otherwise affecting the scope of the claims; and (g) a signed copy of the Acknowledgment and Agreement to Be Bound by Protective Order attached as Exhibit A and the "Certification of Outside Consultant" attached as Exhibit B.

21.     Objections.  The Designating Party will have fourteen (14) calendar days from receipt of the notice to object to the disclosure.  The objection must identify the grounds for the objection.  If the Designating Party does not object during that fourteen-day period, then the Receiving Party may disclose Designated Material to the Outside Consultant pursuant to the terms of this Order.  However, if the Designating Party objects within that period, the Receiving Party may not disclose Designated Material to the challenged individual absent resolution of the dispute or order of an appropriate court.

22.     Judicial Intervention.  If an objection is made, the parties shall meet and confer within fourteen (14) calendar days of such objection to try to resolve the dispute by agreement. If no agreement is reached, the Party seeking to make the disclosure may, within seven (7) calendar days following the conclusion of the initial fourteen (14) calendar day meet and confer period, move the Court for permission to do so pursuant to the procedures outlined in paragraph 8(g) of the Scheduling Order (D.I. 44).  No disclosure of any such Designated Material shall be made by the Receiving Party to the Outside Consultant that is the subject of the Designating Party's objection during this second seven (7) day period.  If the Receiving Party so moves the Court, no disclosure of any such Designated Material shall be made by the Receiving Party to the Outside Consultant that is the subject of the Receiving Party's motion until the Court rules on the Receiving Party's motion.

**INSPECTION AND PRODUCTION OF SOURCE CODE**

23.     The Secure Room.  A Party's Source Code will be made available for inspection in a secure room in a format allowing it to be reasonably reviewed and searched on a stand-alone computer (that is, a computer that is not connected to a network or the Internet and that is locked down so that additional peripheral devices cannot be connected to it) during the hours of 9 a.m.

7

and 7 p.m. on business days at the office of the Producing Party's Counsel of Record or at a separate location that is agreed upon by the parties (the "Secure Room"). The stand-alone computer shall include software utilities which will allow counsel and experts to view and search the Source Code. Before being admitted into the Secure Room, an individual must provide a photo identification card issued by the government of a state of the United States or by the national government of the individual's current citizenship.

24.   Notice of Review of Source Code. Prior to the first inspection of any requested Source Code, the Receiving Party shall provide thirty (30) days' notice of the Source Code that it wishes to inspect. The Receiving Party shall provide fourteen (14) days' notice prior to any additional inspections.

25.   Review of Source Code. No recordable media or recordable devices are permitted in the Secure Room, including without limitation laptops, floppy drives, zip drives, CDs, DVDs, cellular telephones, personal digital assistants, cameras, voice recorders, telephone jacks, smartphones, tablets, peripheral equipment, or other hardware. Non-electronic devices capable of similar functionality are also prohibited, as is loose paper that could be used in a printer. Written notes relating to the Source Code may be taken only in spiral- or permanently-bound notebooks. The Source Code may not be copied into the notes. Notwithstanding this provision, file name and location (*i.e.*, directory path) information may be copied into the notes. The Producing Party may visually monitor the activities of the Receiving Party's representatives during any review, but only to ensure compliance with this Order. The person performing such monitoring shall not record activity taking place in the Secure Room, and shall not report on any activities taking place in the Secure Room, other than as may be required to ensure compliance with this Order.

26.   Requesting Portions of the Source Code. A Receiving Party may request paper copies of necessary, specific portions of the Source Code at the time of inspection. Paper copies are restricted to what is necessary for use in a filing, in an expert report, at a deposition, or at a hearing. A Receiving Party must not request passages to facilitate review of the Source Code

8

away from the Secure Room; the Source Code is to be reviewed and analyzed using the stand-alone computer.  A Receiving Party must demonstrate good cause for any request that consists of more than ten (10) pages of a continuous block of Source Code or 200 pages total, and the burden shall be on the Receiving Party to demonstrate the need for such a printed copy.

27.     Production of Paper Copies.  The Producing Party will provide all such Source Code in paper form including Bates number and the label "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE."  Within seven (7) calendar days, the Producing Party must either (a) produce two (2) copy sets of such pages to one or more offices of the Receiving Party's Counsel of Record or (b) provide notice that the requested portions are excessive or were not requested for a permitted purpose.

28.     Maintenance of Paper Copies.  The copy sets of the Source Code must be kept at all times in the office(s) of Counsel of Record to which the Producing Party produced them.  The copy sets must be kept in a manner that prevents duplication of or unauthorized access to the Source Code, including, without limitation, by storing the Source Code in a locked storage container, which may include a locked desk drawer, where they will not be accessible to persons other than those allowed access under this Order.  Except as explicitly permitted below, in paragraphs 31 and 32, the Receiving Party is prohibited from making additional copies or scanning the printouts.  Outside Consultants and experts may keep a single copy of excerpts of the Source Code that are reasonably necessary for purposes of preparing expert reports.  The excerpts of Source Code must be kept according to the same standards of care that are otherwise identified in this Paragraph for protecting Source Code (e.g., locked storage container, hand carry, and not placed in checked luggage during travel).

29.     Receiving Party Log.  The Receiving Party must maintain a log identifying each person who reviews the printouts and state the date on which such person first reviewed the printouts.  The Receiving Party must provide the Producing Party with a copy of the log on two (2) business days' notice, but no more than once per month absent a showing of good cause.

30.     Use at Depositions and Hearings.  A Receiving Party is prohibited from making copies of Source Code for use at a deposition or at a hearing.  If a Receiving Party intends to use Source Code at a deposition or hearing, such party must provide the Producing Party with three (3) calendar days' advance notice of its intent to use such specific portions of Source Code, in which case the Producing Party shall bring paper copies of those portions of Source Code to the deposition or hearing for use by the Receiving Party.  Copies of Source Code that are marked as deposition or hearing exhibits shall not be provided to the Court Reporter or attached to deposition or hearing transcripts; rather, the record will identify the exhibit by its production numbers.  All paper copies of Source Code brought to the deposition or hearing shall remain with the Producing Counsel's Counsel or Record for secure destruction in a timely manner following the deposition or hearing.

31.     Use in Filings.  A Receiving Party may include excerpts of Source Code in court filings if reasonably necessary, provided any filings containing Source Code excerpts must be designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE," treated as Source Code pursuant to this Order, and filed under seal pursuant to D. Del. LR 5.1.3, using a slip sheet indicating the removal of the sealed materials in any service copies. Outside Consultants may keep a single copy of court filings that contain Source Code excerpts, but only to the extent reasonably necessary and for the sole purpose of rendering their services in this litigation.

32.     Use in Expert Reports and Discovery Responses.  A Receiving Party may include excerpts of Source Code in expert reports and discovery responses to the extent reasonably necessary, provided that any expert reports or discovery responses containing Source Code excerpts must be designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" and treated as Source Code pursuant to this Order.  Outside Consultants may keep a single copy of expert reports and discovery responses that contain Source Code excerpts, but only to the extent reasonably necessary and for the sole purpose of rendering their services in this litigation.

## PROSECUTION BAR

33.     Prosecution Bar.  Any persons who personally review any of Defendants'
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY Material or HIGHLY
CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE Material to which they
were permitted access by this Protective Order are prohibited, during the pendency of the above-
captioned actions and for two (2) years following the final termination of the above-captioned
actions (including any appeals), from participating in the *ex parte* preparation or prosecution of
any patent or patent application related to the Relevant Technology.

## USE OF DESIGNATED MATERIAL

34.     Use of Designated Material by a Receiving Party.  A Receiving Party is permitted
to use Designated Material only for purposes of this action and is prohibited from disclosing
Designated Material except in accordance with this Order.  To the extent that a Designating Party
provides Designated Material to Plaintiffs, Plaintiffs shall not share that material with any Party
besides the Designating Party, absent express written permission from the Designating Party.
Nothing in this Order confers any right to any Defendant to access the Designated Material of
any other Defendant or non-Party.

35.     Use of Designated Material by a Producing Party.  Nothing in this Order restricts
a Producing Party's or Designating Party's use or disclosure of its own Designated Material.

36.     Use of Designated Material at Depositions.  Use of designated materials at
depositions shall be in accordance with paragraphs 16-18 herein.  Any person not permitted to
have access to Designated Material that is disclosed at a deposition will be excluded from the
portion of the deposition relating to that information.  For clarity, a Receiving Party can examine
current directors, officers, employees, designated Rule 30(b)(6) witnesses, and Outside
Consultants of a Producing Party or Designating Party about any Designated Material of that
Producing Party or Designating Party.

37.     Use of Designated Material – Prohibition Against Cross-Production.  A Receiving
Party shall not disclose one Designating Party's or non-Party's Designated Material to any other

11

Party besides the Producing Party through Court filings, oral argument in Court, expert reports, deposition, discovery requests, discovery responses, or any other means, without the express prior written consent of the Designating Party.

38.     Use of Designated Material in Court.  Before disclosing Designated Material of another Party in an open courtroom at trial or other court hearings, the Party seeking to use the Designated Material must provide notice to the Designating Party so that the Designating Party or Producing Party has a reasonable opportunity to take appropriate action to prevent or limit disclosure of the Designated Material in the open courtroom, such as by asking for the courtroom to be sealed or for the transcript or any demonstratives to be designated confidential.  The Parties agree that the use of Designated Material at trial or in other court hearings shall not constitute a waiver of or operate in prejudice to any claim of confidentiality in the Designated Material.

39.     Filing Designated Material.  Absent written permission from the Designating Party or a Court Order issued after appropriate notice, a Party must file Designated Material under seal pursuant to D. Del. LR 5.1.3.  If any person fails to file Designated Material under seal, the Producing Party, Designating Party, or any Party claiming confidentiality for the Material may request that the Court place the filing under seal pursuant to D. Del. LR 5.1.3. Prior to the filing of any redacted version of the sealed filing, the filing Party must provide its proposed redactions to the Designating Party so that the Designating Party has a reasonable opportunity to review the proposed redactions and provide consent to the redacted filing.

40.     Storage and Transmittal of Designated Material.  HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY and HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE Material must be stored and maintained by a Receiving Party at a location in the United States and in a secure manner that ensures that access is limited to the persons authorized under this Order.  HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY and HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE Material may only be transmitted or transported as set forth below:

(a)    HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE
CODE Material may only be transported between or among qualified
recipients by hand delivery.  HIGHLY CONFIDENTIAL –
ATTORNEYS' EYES ONLY – SOURCE CODE Material may not be
exported outside the United States or released to any foreign national
(even if within the United States).

(b)    HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY Material
may only be transported: (i) by hand delivery; (ii) in sealed envelopes or
containers via the mail or an established overnight, freight, delivery, or
messenger service; or (iii) by telephone, facsimile, or other electronic
transmission system, where, under the circumstances, there is no
reasonable likelihood that the transmission will be intercepted or misused
by any person who is not a qualified recipient.  HIGHLY
CONFIDENTIAL – ATTORNEYS' EYES ONLY Material may not be
exported outside the United States or released to any foreign national
(even if within the United States).

41.    <u>Unauthorized Use or Disclosure</u>.  If a Receiving Party learns of the disclosure or
use of Designated Material in any circumstance not authorized by this Order, it must promptly
notify in writing the Designating Party of the unauthorized use or disclosure.  In the event of
unauthorized disclosure, the Receiving Party must also promptly (a) use its best efforts to
retrieve all copies of the Designated Material, (b) inform the person to whom unauthorized
disclosures were made of the terms of this Order, and (c) ask that person to execute the
"Acknowledgment and Agreement to be Bound by Protective Order" that is attached as
Exhibit A.

## PROCEDURE FOR DESIGNATING MATERIALS

42.    <u>Designating Documents</u>.  For Material in documentary form (other than
transcripts or documents produced natively), the Designating Party must affix the legend

"CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" on each page that contains Designated Material.

43.     Designating Other Material.  For non-documentary Material, the Designating Party must affix in a prominent place on the exterior of the container or containers in which the information or thing is stored the legend "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE."  For any documents produced natively, the file name may be modified to indicate the appropriate designation.

44.     Testimony and Transcripts.  For testimony given in deposition or in other pretrial or trial proceedings, the Designating Party will specify any portions of the testimony that it wishes to designate as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE."  In the case of depositions, the Designating Party may also designate any portion of a deposition transcript by informing the reporter and the Parties in writing of the applicable designations within thirty (30) calendar days of completion of the certified transcript.  The entire transcript of all depositions will be treated as HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY until the thirty-day period has expired.  The court reporter must affix to the top of transcript pages identified by a Designating Party the legend "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" as instructed by the Designating Party. Subject to the Court's preferences, the parties will work together to make arrangements for making such designations to exhibits, testimony, and other Material used during hearings, pre-trial proceedings, and during the trial of this case.

45.     Non-Party Designations.  A non-Party producing information or Material voluntarily or pursuant to a subpoena or court order may designate the information or Material in the same manner as a Party.

14

46.     <u>Challenges to Designations</u>.  Any Party or non-Party may challenge a confidentiality designation at any time according to the following procedures:

(a)     <u>Written Notice</u>.  The Designating Party shall use reasonable care when designating Material as CONFIDENTIAL, HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY, or HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE.  Nothing in this Protective Order shall prevent a Receiving Party from contending that any Material has been improperly designated.  If the Receiving Party disagrees with the designation of any Material, the Receiving Party may challenge such designation by providing the Designating Party with written notice of such challenge and by identifying the Material as specifically as possible.  The challenge should be made as soon as is practicable following production, and unreasonable delay may be considered a waiver of the challenge if the circumstances so warrant, although nothing in this provision should be interpreted as creating a presumption of waiver based on delay.  If the parties do not resolve the dispute within fourteen (14) days of the Designating Party receiving written notice of the challenge, the Receiving Party may file a motion with the Court challenging the designation as invalid as set forth below.

(b)     <u>Meet and Confer</u>.  A Party that elects to challenge a designation must do so in good faith and, in addition to the written notice, must confer directly (in voice-to-voice dialogue; other forms of communication are not sufficient) with counsel for the Designating Party.  In conferring, the challenging Party must explain the basis for its belief that the confidentiality designation was not proper, must give the Designating Party an opportunity to review the Material challenged and to reconsider the circumstances, and, if no change in designation is offered, to explain

15

the basis for the chosen designation.  A challenging Party may file a
motion challenging the designation only if it has engaged in this meet-and-
confer dialogue first.  Each such motion must be accompanied by a
competent declaration that affirms that the movant has complied with
these meet-and-confer requirements and that sets forth with specificity the
justification for the designation that was given by the Designating Party in
the meet-and-confer dialogue.

(c)    Judicial Intervention.  The burden of persuasion in any such challenge
proceeding shall be on the Designating Party.   Until the Court rules on the
challenge, all parties shall continue to afford the Material in question the
level of protection to which it is entitled under the Designating Party's
designation.

## INADVERTENT PRODUCTION

47.    Failure to Designate.  A failure to designate confidential Material does not waive
a Designating Party's right to secure protection under this Order for that Material.  On discovery
of a failure to designate, a Designating Party may give written notice of the designation and
provide substitute copies of the Material bearing the appropriate legend.  The Receiving Party
must then treat the Material in accordance with the new designation, retrieve and destroy all
copies of the previously produced version of the Material from anyone who had received it, and
destroy any electronic copies of the previously-produced version.

48.    No Waiver of Privilege.  Inspection or production of Material, whether
inadvertent or otherwise, will not constitute a waiver of the attorney-client privilege or work
product immunity or any other applicable privilege or immunity from discovery if, after
becoming aware of a disclosure, the Producing Party or Designating Party designates the
Material as privileged or immune from discovery.  On request by the Producing Party or
Designating Party, the Receiving Party must immediately retrieve and return (or destroy) any
copies of the identified Material, including copies distributed to others (e.g., Outside Consultants

16

and Professional Vendors).  The Receiving Party will remain entitled to challenge the privilege or immunity or immunity designation, but may not quote or otherwise use the Material in support of any such challenge.  The Producing Party shall retain the identified Material for submission to the Court in the event that the Receiving Party challenges the privilege or immunity designation.

**MISCELLANEOUS**

49.      <u>Discovery from Experts or Consultants</u>.  Absent good cause, drafts of reports of testifying experts, and reports and other written materials, including drafts, of consulting experts, shall not be discoverable.  Reports and materials exempt from discovery under the foregoing Paragraph shall be treated as attorney work product for the purposes of this case and Protective Order.

50.      <u>Enforcement and Jurisdiction</u>.  This Court will have exclusive jurisdiction to enforce this Order against the Parties and any individuals who execute Exhibits A and/or B to this Protective Order, even following the final disposition of this action.  Every individual who reviews Designated Material also agrees to be subject to the jurisdiction of this Court for the purpose of any proceedings related to the enforcement of this Order.

51.      <u>Injunctive Relief</u>.  Every individual who reviews Designated Material acknowledges that a breach of this Order may result in immediate and irreparable injury for which there is no adequate remedy at law.  A party may immediately apply to obtain temporary, preliminary, and permanent injunctive relief against a violation or threatened violation of this Order.

52.      <u>Final Disposition</u>.  Within sixty (60) days after the final disposition of this action, each Receiving Party must destroy or return to the Producing Party all Designated Material and submit a written confirmation of the return or destruction to the Producing Party (and, if not the same person or entity, to the Designating Party).  However, Counsel of Record are entitled to retain one archival copy of all pleadings, motion papers and supporting materials, transcripts, legal memoranda, correspondence, briefs and supporting materials, written discovery requests and responses, exhibits offered or introduced into evidence at trial, or attorney work product.

Any such archival copies remain subject to this Protective Order.  Emails stored on Counsel of Record's computers containing Designated Materials shall not constitute the permitted one archival copy and therefore must be deleted within sixty (60) days after the final disposition of this action.

53.    <u>Duration</u>.  The confidentiality obligations imposed by this Order will remain in effect even after the final disposition of this action, until and unless otherwise agreed to by the Designating Party or ordered by the Court.

54.    <u>Further Protections</u>.  This Order is entered without prejudice to the right of any party to apply to the Court at any time for additional protection or to relax or rescind the restrictions of this Order.

55.    <u>Subpoenas in Other Litigation</u>.  If a Receiving Party is served with a subpoena or a court order that would compel disclosure of any Designated Material, it must so notify the Producing Party (and, if not the same person or entity, the Designating Party), in writing (by hand delivery, fax, or email) promptly and in no event more than ten (10) days after receiving the subpoena or order.  The notice must include a copy of the subpoena or order.  The Receiving Party also must promptly inform in writing the party who caused the subpoena or order to issue that some or all of the requested material is subject to this Order.  The Receiving Party must also cooperate with respect to all reasonable procedures sought to be pursued by the Producing or Designating Party whose Designated Material may be affected.

56.    <u>Parties' Access to HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY Material</u>.  The Parties understand the need for the Receiving Party to have access to certain documents designated HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY, and agree to use their best efforts to prepare redacted versions of all pleadings, motion papers (including all supporting and opposing papers and exhibits and declarations thereto), briefs (including all supporting and opposing papers and exhibits and declarations thereto), written discovery requests and responses, and expert reports designated HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY in an expedited manner.  For documents of reasonable length, three (3) business

days is presumed to be a reasonable time period to review and provide consent to proposed redactions.

57.     Other Proceedings.  By entering this order and limiting the disclosure of information in this case, the Court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case. Any person or party subject to this order who becomes subject to a motion to disclose another party's information designated "confidential," "highly confidential – attorneys' eyes only," and "highly confidential – attorney's eyes only – source code" pursuant to this order shall promptly notify that party of the motion so that the party may have an opportunity to appear and be heard on whether that information should be disclosed.

**IT IS SO STIPULATED.**

Dated:  September __, 2019.

DEVLIN LAW FIRM LLC                    POTTER ANDERSON & CORROON LLP

*/s/ Timothy Devlin*                           */s/*
Timothy Devlin (No. 4241)              David Ellis Moore
1526 Gilpin Avenue                        Bindu Ann George Palapura
Wilmington, DE 19806                    1313 N. Market St., Hercules Plaza, 6th Flr.
Telephone: (302) 449-9010             P.O. Box 951
tdevlin@devlinlawfirm.com            Wilmington, DE 19899-0951
                                                   Telephone: (302) 984-6000
*Attorney for Plaintiff*                     dmoore@potteranderson.com
*S.I.SV.EL. Societa Italiana Per Lo Sviluppo*   bpalapura@potteranderson.com
*Dell'elettronica S.p.A.*

                                                   *Attorneys for Defendants Spotify USA Inc. and*
                                                   *Rhapsody International Inc.*

SO ORDERED this _____ day of _____, 2019.

_____

The Honorable Christopher J. Burke
Magistrate Judge, United States District Court

**Exhibit A**

## ACKNOWLEDGMENT AND AGREEMENT
## TO BE BOUND BY PROTECTIVE ORDER

I, _____, state:

1.  I reside at _____.

2.  My present employer is _____.

3.  My present occupation or job description is _____.

4.  I have read the Protective Order ("Order") in the matter(s) of *S.I.SV.EL. Societa Italiana Per Lo Sviluppo Dell'elettronica S.p.A. v. Spotify USA Inc.,* C.A. No. 1:18-cv-00070-MN-CJB and/or *S.I.SV.EL. Societa Italiana Per Lo Sviluppo Dell'elettronica S.p.A. v. Rhapsody International Inc.,* C.A. No. 1:18-cv-00069-MN-CJB and understand and will abide by its terms. I will not divulge any Designated Material to persons other than those specifically authorized by the Order.  I will not use any Designated Material in any manner not expressly allowed by the Order.

5.  I agree to be subject to the authority of the United States District Court in the District of Delaware in the event of any dispute related to this agreement.

6.  I state under penalty of perjury under the laws of the United States that the foregoing is true and correct.


Executed on _____ 20___    _____

                                      Signature

21

**Exhibit B**

**CERTIFICATION OF OUTSIDE CONSULTANT
REGARDING PROTECTIVE ORDER**

I, _____, state:

1.      I have read the Protective Order ("Order") in the matter(s) of *S.I.SV.EL. Societa Italiana Per Lo Sviluppo Dell'elettronica S.p.A. v. Spotify USA Inc.,* C.A. No. 1:18-cv-00070-MN-CJB and/or *S.I.SV.EL. Societa Italiana Per Lo Sviluppo Dell'elettronica S.p.A. v. Rhapsody International Inc.,* C.A. No. 1:18-cv-00069-MN-CJB; and understand and will abide by its terms.

2.      I am not a current or anticipated officer, director, or employee of a Party or of a Party's competitor, or a current or anticipated consultant involved in product and/or process design or development for a Party or for a Party's competitor.

3.      If at any time after I execute this Certification of Outside Consultant and during the pendency of the litigation I become an officer, director, or employee of a Party or of a Party's competitor, or a consultant involved in product and/or process design or development for a Party or for a Party's competitor, I will promptly inform the counsel for the Party who retained me in this litigation.  I will not thereafter review any Designated Materials marked as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" unless and until the Parties agree or the Court orders otherwise.

4.      I will not use any Designated Material for any purpose other than this litigation. Without limiting the foregoing, I agree not to use any Designated Material for commercial hardware, software, or product development.

5.      To the extent I review any of Defendants' HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY Material or HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE Material to which I am permitted access under this Protective Order, I agree that, during the pendency of the above-referenced actions and for two (2) years following the final termination of the above-referenced actions (including any appeals), I will not:

    a.   participate in the preparation or prosecution of any patent or patent application related to the Relevant Technology; or

    b.   participate in the drafting, revision, or amendment of any patent claim involved in an *inter partes* review, patent reexamination, patent reissue, or other post-grant review proceeding related to the Relevant Technology.

6.    I agree to be subject to the authority of the United States District Court for the District of Delaware in the event of any dispute related to this certification.

7.    I state under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on _____ 20___.    _____

                                        Signature

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

T-JAT SYSTEMS 2006 LTD.,

        Plaintiff,

    v.

EXPEDIA, INC. (DE) and ORBITZ
WORLDWIDE, INC.,

        Defendants.

C.A. No. 16-cv-581-RGA

## ORDER

Presently before the Court is the issue of whether two of T-Jat's employees, Dr. Golobrodsky and Mr. Vershavsky, may access documents designated Attorney's Eyes Only (AEO). I have considered the parties' papers. (D.I. 76, 77, 82, 84). I held a discovery conference on October 15, 2018.

Inherent in a court's power under Federal Rule of Civil Procedure 26 is the ability to restrict an individual's access to confidential information when there is "an unacceptable opportunity for inadvertent disclosure." *See U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984). The Federal Circuit has made clear that limits to attorney access should be judged on "a counsel-by-counsel basis, and cannot be determined solely by giving controlling weight to the classification of counsel as in-house rather than retained." *Id.* "[T]he counsel-by-counsel determination should turn on the extent to which counsel is involved in 'competitive decisionmaking' with its client." *In re Deutsche Bank Trust Co. Ams.*, 605 F.3d 1373, 1378 (Fed. Cir. 2010). Competitive decisionmaking is "shorthand for a counsel's activities,

association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *Id.* (quoting *U.S. Steel*, 730 F.2d at 1468 n.3). Even if a court is satisfied that a risk of inadvertent disclosure or misuse exists, the court "must balance this risk against the potential harm to the opposing party" in deciding the scope of the protective order. *Id.* at 1380.

Although T-Jat does not have in-house counsel and is requesting access for non-attorney employees, I believe the principles set out in *U.S. Steel* still apply. *See, e.g.*, *McAirlaids, Inc. v. Kimberly-Clark Corp.*, 299 F.R.D. 498, 500–01 (W.D. Va. 2014). Whether "an unacceptable opportunity for inadvertent disclosure" exists depends on the extent to which Dr. Golobrodsky and Mr. Vershavsky are involved in competitive decisionmaking at T-Jat. This risk of inadvertent disclosure should then be balanced against the potential harm to T-Jat if Dr. Golobrodsky and Mr. Vershavsky cannot access the AEO materials.

T-Jat suggests a different framework altogether. T-Jat cites to three cases, all by the same judge, that say essentially the same thing. That is, it was the practice of the judge to give at least one person "from the company" access to all the documents. (D.I. 77 at 3). It may be that all three cases reached the right result, but I think T-Jat attempts to make the judge's practice into a legal rule. I do not think the case law supports such a finding. For example, in *Safe Flight Instrument Corp. v. Sundstrand Data Control Inc.*, 682 F. Supp. 20 (D. Del. 1988), the court cites numerous cases for the proposition that a party's "technical information" would only be disclosed to opposing "trial counsel" and "independent experts" despite the opposing party's request that it be submitted to at least one employee of the opposing party. *Id.* at 22. Likewise, other courts in more recent cases have declined to allow client employees access to confidential

information when those employees are competitive decisionmakers. *See McAirlaids*, 299 F.R.D.
at 501; *3M Co. v. ACS Indus., Inc.*, 2015 WL 13484695, at *2–3 (D. Minn. Dec. 2, 2015); *Wanke
Cascade Distrib. Ltd. v. Forbo Flooring, Inc.*, 2014 WL 12648465, at *2–3 (D. Or. Apr. 11,
2014).

Here, unlike in much of the case law, the parties are not direct competitors. *See, e.g.*,
*Safe Flight*, 682 F. Supp. at 21. Therefore, additional analysis is required to determine what
harm to Defendants, if any, might result from inadvertent disclosure.[1] T-Jat argues that neither
Dr. Golobrodsky nor Mr. Vershavsky are competitive decisionmakers "in the sense of any
competition with Expedia." (D.I. 77 at 2). I disagree. The parties' market relationship, though
relevant, is not dispositive of whether T-Jat's employees are competitive decisionmakers. *See
Blackbird Tech LLC v. Serv. Lighting & Elec. Supplies, Inc.*, 2016 WL 2904592, at *4 (D. Del.
May 18, 2016). I think the key question is whether "Defendants' trade secrets and other
sensitive information could potentially be of value to [T-Jat]." *R.R. Donnelley & Sons Co. v.
Quark, Inc.*, 2007 WL 61885, at *2 n.2 (D. Del. Jan. 4, 2007).

Defendants' "core technical documents," produced as an example of materials that
Defendants would designate as AEO, show a detailed presentation on Expedia's backend
systems. (D.I. 82 at 1, Exs. 7–10). Defendants assert, "[I]t will be challenging for T-Jat not to
use that information in connection with its own business."[2] (*Id.* at 1). On the other hand, T-Jat

---

[1] I believe this is a preliminary issue. If inadvertent disclosure by T-Jat's employees poses no risk of
harm to Defendants, Defendants will fail to show good cause for the proposed protective order
irrespective of the employees' decisionmaking power. This is consistent with the Federal Circuit's
definition for competitive decisionmaker, which asks to what extent one influences the client's decisions
in light of "information about a *competitor*." *U.S. Steel*, 730 F.2d at 1468 n.3 (emphasis added).

[2] In an earlier letter Defendants also argued that "the technology Expedia will disclose is the focus of at
least one of the products T-Jat markets," and "T-Jat has long been involved in litigation and licensing
involving the asserted patents and has said that it intends to bring additional lawsuits." (D.I. 76 at 1–2).
During the discovery conference, however, T-Jat denied both allegations and Defendants indicated that

argues that there is no risk of competition, because it "markets a platform to enable simultaneous web access from multiple devices and communication channels" while Expedia provides "travel-related services and software." (D.I. 77 at 1).

Based on the present record, it is not clear exactly what value T-Jat may derive from Defendants' confidential information. But, it appears that both T-Jat and Expedia provide technology-based products/services. Given the fact that this is a patent infringement action, it seems likely that, even if T-Jat and Expedia do not have competing products/services, they employ overlapping technology in those products/services. Therefore, the parties share an interest in the same technological field. T-Jat would gain a competitive advantage if it inadvertently used knowledge from Defendants' AEO materials in its own research and development.[3] Therefore, I think Defendants have shown a sufficient likelihood of harm from inadvertent disclosure to require further analysis of whether Dr. Golobrodsky and Mr. Vershavsky are competitive decisionmakers.

I believe Dr. Golobrodsky is a competitive decisionmaker. Dr. Golobrodsky is T-Jat's Chief Science Officer and oversees "technical operations." In addition, he is a founder, shareholder, and listed inventor on both asserted patents. T-Jat represented during the discovery conference that it has about ten employees in total, including employees at related companies. It seems probable that Dr. Golobrodsky plays a large role in most, if not all, of T-Jat's technical decisions. Therefore, I find it likely that Dr. Golobrodsky has both the expertise and

---

they know very little about T-Jat's business. I do not think T-Jat gave a clear explanation of its business in the papers or during the discovery conference.

[3] T-Jat represented at the discovery conference that its patent portfolio with the asserted patents is "mature," and that the only patent it is currently prosecuting covers an unrelated technology. Therefore, any risk of competitive advantage will likely relate to T-Jat's use, rather than patenting, of Defendants' technology.

management control to inadvertently use the information from Defendant's AEO materials to T-Jat's competitive advantage.

Mr. Vershavsky does not appear to be a competitive decisionmaker, at least to the same extent as Dr. Golobrodsky. Mr. Vershavsky is a shareholder in a related company and a "qualified technician." (D.I. 77 at 2). He works at T-Jat "in the capacity of operations, high level quality assurances, and overall logistical support," and "is not involved in any management capacity." (*Id.*). Unlike Dr. Golobrodsky, Mr. Vershavsky seems to have limited control over which technologies T-Jat pursues and how that technology is monetized.

T-Jat argues that Dr. Golobrodsky and Mr. Vershavsky need to have access to the AEO materials to effectively decide "case strategy" and "assist in the technical aspects of the case." (D.I. 77 at 2). "The risk of inadvertent disclosure cannot be overcome by the mere contention that access to confidential information is necessary for case management." *R.R. Donnelley*, 2007 WL 61885, at *1. Further, I doubt that either Dr. Golobrodsky or Mr. Vershavsky are uniquely qualified to "assist in the technical aspects of the case"—the same role could be played by a third-party expert. Although Mr. Vershavsky does not appear to have the same decisionmaking power as Dr. Golobrodsky, I believe, given his technical expertise and T-Jat's small size, there is still a risk that he will inadvertently apply the technical knowledge acquired from Defendants' AEO materials to T-Jat's advantage. "It is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so." *In re Deutsche Bank*, 605 F.3d at 1378 (citation and brackets omitted). Therefore, on balance, I think the risk of harm to Defendants from inadvertent disclosure outweighs any harm to T-Jat from not having Dr. Golobrodsky and Mr. Vershavsky access the confidential information. It should not be an unacceptable hardship for T-Jat to rely

on litigation counsel and outside experts to review the AEO materials.  "This is a necessary consequence of achieving a balance between full disclosure in discovery and protection against economic injury." *McAirlaids*, 299 F.R.D. at 501–02.

The parties should resubmit the proposed protective order in conformity with this Order.


IT IS SO ORDERED this __19__ day of October 2018.

United States District Judge